******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## ANTHONY JOHNSON *v.* COMMISSIONER
## OF CORRECTION
### (AC 46910)

Suarez, Seeley and Sheldon, Js.

*Syllabus*

The petitioner, who had been convicted of murder, appealed following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claimed, inter alia, that the habeas court erroneously concluded that he failed to establish that his trial counsel provided ineffective assistance by allegedly failing to convey a plea offer to him. *Held*:

The habeas court did not abuse its discretion in denying the petition for certification to appeal as the petitioner failed to show that his claim involved an issue that was debatable among jurists of reason, that a court could resolve in a different manner, or that was adequate to deserve encouragement to proceed further.

Even if this court were to assume that a plea offer had been made to the petitioner and that his trial counsel performed deficiently by failing to inform him of the offer and to advise him to take it, the petitioner failed to meet his burden of demonstrating that it was reasonably probable that he would have accepted a plea deal but for the deficient performance of his trial counsel and, therefore, that he was prejudiced by his counsel's allegedly deficient performance.

Argued September 6—officially released October 15, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*, judgment denying the petition; thereafter, the court, *Newson, J.*, denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Matthew C. Eagan*, assigned counsel, for the appellant (petitioner).

*Timothy F. Costello*, supervisory assistant state's attorney, with whom, on the brief, were *Christian M.*

*Watson*, state's attorney, and *Erin Stack*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

SEELEY, J. The petitioner, Anthony Johnson, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court (1) abused its discretion in denying his petition for certification to appeal; (2) improperly concluded that he failed to establish that his trial counsel's performance was constitutionally deficient; and (3) improperly concluded that he was not prejudiced by his trial counsel's deficient performance in the underlying criminal proceeding. We disagree and dismiss the appeal.

The following facts and procedural history, as set forth by this court in the petitioner's direct appeal from his conviction or found by the habeas court, are relevant to our resolution of this appeal. "On October 31, 2009, several people, including the [petitioner] and Iyshia Lamboy, attended a Halloween party at the Paris Bar in Bristol. Lamboy had known the [petitioner] for three or four years. After the party broke up, Lamboy stopped at a Sunoco gas station, where the [petitioner], Freddy Felix (victim), and others were engaged in an argument. Lamboy noticed the red Acura automobile that the [petitioner] was known to drive also at the Sunoco station. Lamboy later drove to Davis Drive in Bristol. When she arrived, the [petitioner's] red Acura already was parked in the area. Approximately twenty-five people were gathered around some men, who were arguing. Lamboy got out of her car and stood next to the victim, who was standing next to his car. The [petitioner] was present and standing off to the side. Two of the men who were arguing got into a fistfight, but the situation

defused after some people agreed to leave. Soon thereafter, however, the fighting resumed, and the [petitioner], after stating that he 'had the heat,' walked over to his car, where Lamboy saw him place a mask over the bottom portion of his face, pull the hood of his sweatshirt over his head, and put on a dark nylon glove. Lamboy approached the [petitioner] and began shouting at him. Other people then pulled her away from the [petitioner]. The [petitioner] approached the victim, pulled a gun from his chest area, and fired four shots, two of which hit the victim, killing him. The [petitioner] ran from the area, leaving the red Acura behind.

"Prior to the shooting, Ebony Shell, who lived in a second floor apartment on Davis Drive, was asleep in her bedroom when she was awoken by the sounds of people arguing outside. She looked out of her bedroom window and saw approximately thirty people gathered. She recognized the [petitioner], who was wearing a dark hooded sweatshirt. The [petitioner] was arguing with a heavyset woman until two other people pulled her away from him. Shell saw the victim standing next to his car, arguing with another man whom she knew as Javi. The [petitioner] then walked around a dumpster and reemerged with a mask covering part of his face and his hood raised over his head. He moved his arm toward his chest; Shell then saw flashes and heard gunfire, and she closed her curtain. Upon reopening the curtain, Shell saw a man lying on the ground, and the [petitioner] was gone.

"When the police conducted their investigation, they found, parked in the area, the red Acura that Lamboy had seen the [petitioner] driving, which was registered to the [petitioner's] father. Inside the car, they found the [petitioner's] driver's license and a photograph of the [petitioner] and his friend, Javier, which had been taken and printed at the Halloween party at the Paris Bar.

"Very late on October 31, 2009, Michael Bergin picked up his friend, Anthony Garcia. The two later picked up the [petitioner] and another man named Lamar. While in Bergin's vehicle, Lamar repeatedly asked the [petitioner] why he shot the victim, and the [petitioner] told Lamar not to discuss his business, but he later explained that there had been a fight at the Sunoco gas station, and, when the argument moved to Davis Drive, he went and got his gun. Bergin dropped off the [petitioner] and Lamar at the Plymouth Motor Lodge, and the [petitioner] paid him with cocaine for the ride. Bergin, fearing that he could be considered an accessory after the fact, went to a police station and told officers what he had heard. Two nights later, the police arrested the [petitioner] at the Holiday Inn in Southington. On the [petitioner's] nightstand was a newspaper clipping about the murder." (Footnote omitted.) *State* v. *Johnson*, 149 Conn. App. 816, 818–20, 89 A.3d 983, cert. denied, 312 Conn. 915, 93 A.3d 597 (2014).

The petitioner was charged with murder in violation of General Statutes § 53a-54a (a). On May 26, 2011, the petitioner was convicted of that charge following a jury trial, and, on August 5, 2011, he was sentenced to a term of forty-five years of incarceration. In 2014, this court affirmed the petitioner's conviction on direct appeal; see *State* v. *Johnson*, supra, 149 Conn. App. 831; and our Supreme Court denied certification to appeal. See *State* v. *Johnson*, 312 Conn. 915, 93 A.3d 597 (2014).

The petitioner commenced this habeas action in 2017 and amended his petition for a writ of habeas corpus on December 10, 2021, alleging ineffective assistance by his trial counsel, Attorney Norman Pattis (trial counsel). Specifically, he alleged, inter alia, that his constitutional right to the effective assistance of counsel during plea negotiations was violated because trial counsel failed to convey to the petitioner a plea offer from the state and to adequately advise the petitioner to accept the

plea, or to at least recommend that the petitioner pursue a plea agreement with the prosecuting authority.[1] The court conducted a trial on April 26 and May 30, 2023, during which the petitioner was represented by counsel. He testified on his own behalf and presented the testimony of his trial counsel; Brian W. Preleski, then state's attorney in the judicial district of New Britain during the petitioner's trial (and now a judge of the Superior Court); Paul Rotiroti, an assistant state's attorney in the judicial district of New Britain during the petitioner's trial; and Attorney Michael Blanchard, a criminal defense expert.

On July 14, 2023, the court, *Newson, J.*, issued a memorandum of decision in which it denied the petitioner's amended habeas petition. In addressing the petitioner's claim that his trial counsel's performance was deficient during the plea process, the court stated: "On August 8, [2010],[2] [trial counsel] and the petitioner appeared in court, however, the attorney assigned to handle the file for the state, Attorney . . . Preleski, was not at work that day. The case was covered by [Assistant] State's Attorney . . . Rotiroti. After apparently discussing matters briefly with [the trial judge] in chambers, the parties went on the record, discussed setting trial dates, and made mention of a failed attempt at plea negotiations. Specifically, the conversation, during which the petitioner was physically present, went as follows:

---

[1] The petitioner's amended habeas petition sets forth four other reasons in support of his claim that his trial counsel's performance was deficient. On appeal, however, the petitioner challenges only the court's determination that the petitioner's trial counsel was not deficient for failing to convey a plea offer and to advise the petitioner to accept a plea or to pursue a plea offer with the prosecuting authority. We limit our review, therefore, to that ground only.

[2] As noted by the petitioner at oral argument before this court, the memorandum of decision incorrectly identifies the date of the relevant court proceedings as August 8, 2011, instead of the correct date, August 8, 2010. This scrivener's error does not affect our analysis.

" '[The Court]: Okay. I understand this is [Attorney] Preleski's matter and, what we had discussed, that the offer was given is rejected, just so I can go on the record with that.

" '[Trial Counsel]: The state conveyed a willingness to deal with a certain range that we think is well beyond what we're prepared to accept.

" '[The Court]: Okay.

" '[Attorney Rotiroti]: And just to make a record, that was from [Attorney] Preleski, and I accept the court and [trial counsel's] representation, but I was not involved.' . . .

"Following court that day, Attorney Rotiroti marked the outside of the state's file with a note saying, 'Client rejects your offer of "in 30yr range.' " . . . [The petitioner] insists, rather vehemently, that the above constituted evidence of an earnest plea offer 'for thirty years' that [his trial counsel] failed to convey and discuss with the petitioner and that the petitioner should now have the opportunity to accept. Other than the petitioner's Twilight Zone view of the evidence, there is uncontroverted testimony that there was never any plea [offer]." (Emphasis omitted; footnote omitted.) The court, thus, concluded that trial counsel "was not deficient because there was no plea offer and [that] the petitioner suffered no prejudice for the same reason."[3]

---

[3] The court also discussed the strength of the state's case against the petitioner, stating: "The petitioner shot someone in front of a crowd of as many as twenty-five people, including one [individual] he had known for years and personally interacted with immediately before the shooting and at least one other who knew him personally. . . . [Trial counsel] [testified] that he went over the case with the petitioner and that the petitioner understood that the case against him was rather solid, including letting the petitioner know that two of the people who identified the petitioner knew him personally. [Trial counsel] also advised the petitioner that . . . he could likely expect something close to the maximum sixty years if he was convicted after a trial."

As to the portion of the petitioner's ineffective assistance of counsel claim relating to trial counsel's alleged failure to advise the petitioner that resolving the case by way of a plea bargain was the best course of action for the petitioner, the court stated: "[Trial counsel] testified that he did not believe he advised the petitioner that an offer in the area of thirty years was something he should consider because the petitioner had made it clear he was not interested in taking a plea and [trial counsel] did not want to seem disloyal to his client's wishes. [Trial counsel] did testify that he had advised the petitioner that 'he could likely expect to get the sixty years if convicted.' Whether [trial counsel] was deficient for failing to advise the petitioner that he should seek a plea offer need not be resolved, because the court finds the credible evidence provided indicates that the petitioner was not interested in accepting a plea bargain or at least not at all willing to accept one 'in the area of thirty years.'

"The credible evidence found by this court indicates that the petitioner was never interested in a plea bargain. Although the petitioner denied it, the court found particularly credible the statement [trial counsel] said [the petitioner] made to him when he discussed [the petitioner's] exposure and the possibility of a plea agreement [namely] that the petitioner responded: 'I could never make a deal. It would break my mother's heart.' In fact, at sentencing, after having been convicted by a jury, the petitioner continued to maintain his innocence. Anyone serving forty-five years would, with hindsight, obviously find a prior offer 'in the thirty year range' acceptable, but a man who stands convicted at sentencing and continues to profess his innocence does not exhibit the mindset of a person who had any true willingness to accept a plea bargain." (Footnote omitted.)

The petitioner subsequently filed a petition for certification to appeal, which the court also denied. This appeal followed. Additional facts and procedural history will be set forth as necessary.

The petitioner claims that the court abused its discretion by denying his petition for certification to appeal from the judgment denying his amended habeas petition. Specifically, he challenges the court's determinations that his trial counsel did not perform deficiently with respect to counsel's alleged failure to convey a plea offer from the state and counsel's failure to advise the petitioner to settle his case by way of plea bargain, and that the petitioner was not prejudiced by any alleged deficient performance of his trial counsel concerning the plea negotiation process. According to the petitioner, "[t]his case involves the question of trial counsel's obligation to present the possibility of a plea agreement to his client and, where the evidence of guilt is overwhelming, [to] recommend to the client that he should accept the plea offer." The petitioner argues that, because his trial counsel's performance was deficient and because he was prejudiced thereby, it was an abuse of the court's discretion to deny his petition for certification to appeal. Before we address the merits of the petitioner's claim, we first set forth the legal principles and standard of review that guide our analysis.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the [disposition] of his [or her] petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he [or she] must demonstrate that the

denial of his [or her] petition for certification consti-
tuted an abuse of discretion. . . . Second, if the peti-
tioner can show an abuse of discretion, he [or she] must
then prove that the decision of the habeas court should
be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must
demonstrate that the [resolution of the underlying claim
involves issues that] are debatable among jurists of
reason; that a court could resolve the issues [in a differ-
ent manner]; or that the questions are adequate to
deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused
its discretion in denying the petitioner's request for
certification, we necessarily must consider the merits of
the petitioner's underlying claims to determine whether
the habeas court reasonably determined that the peti-
tioner's appeal was frivolous." (Internal quotation
marks omitted.) *Crenshaw* v. *Commissioner of Correc-
tion*, 215 Conn. App. 207, 215–16, 281 A.3d 546, cert.
denied, 345 Conn. 966, 285 A.3d 389 (2022). We thus
turn to the merits of the petitioner's claim that the
court erroneously concluded that the petitioner failed
to establish that his trial counsel provided ineffective
assistance by failing to present and recommend a plea
offer from the state.

The following additional facts are relevant to this
claim. At the habeas trial, the petitioner testified that
he "told [his trial counsel] that [he] was willing to take
a plea, if it was the right offer" and that he "felt like
. . . [his] best bet was to take a plea, which is why
[he] expressed [that] to [trial counsel]." The petitioner
also answered affirmatively when questioned as to
whether he had asked his trial counsel to "pursue a
plea bargain" and if he would have accepted a plea
bargain. The petitioner denied that he ever told trial
counsel that he would not accept a plea offer in the

range of thirty years. He asserted that he "felt as though . . . if [he] could get something around the twenty-five-ish range . . . that would be reasonable" and also claimed that trial counsel told him "that [counsel] felt like [he] had a winnable case at trial" because "a lot of the evidence was circumstantial and . . . [counsel] didn't feel like the [eyewitnesses] [were] that strong," never conveyed to him any offer made by the state before the August 8, 2010 hearing and told him afterward "that the offer was of thirty years and [trial counsel] was not willing to take that because [counsel] had confidence in going to trial."

Trial counsel, on the other hand, testified that he told the petitioner that he faced twenty-five to sixty years if convicted and that the state had a "strong case" in which there was "a substantial likelihood that he would be convicted . . . ." Trial counsel also testified that he inquired as to whether "[the petitioner] want[ed] to try to work this case out" with the state. He further testified that the petitioner responded to his suggestion that he "approach the state on an offer" by telling trial counsel that "[h]e could never take a deal. It would break his mother's heart." Trial counsel acknowledged discussing the possibility of an offer in the "thirty year range" with the assigned state's attorney and relaying the same back to the petitioner, however, trial counsel asserted that the petitioner "was never interested in negotiating" and responded by saying, "I can't do it. It would break my mother's heart . . . ."[4]

The following relevant legal principles govern our review of this claim. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court

---

[4] In addition to the testimony of the petitioner and trial counsel, Preleski testified that his "recollection of the plea negotiations were that [trial counsel] never wanted an offer. What he indicated is, [the petitioner] didn't want to entertain any offers."

cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong." (Citations omitted; internal quotation marks omitted.) *Crenshaw* v. *Commissioner of Correction*, supra, 215 Conn. App. 216–17.

"To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment." (Internal quotation marks omitted.) Id., 217. Furthermore, "[a] defendant's right to effective representation applies to all critical stages of a criminal prosecution, including any plea negotiations. . . . Counsel performs effectively and reasonably when he provides a client with adequate information and advice on which the client can make an informed decision as to whether to accept the state's plea offer. . . . As part of this advice, counsel must communicate to the defendant the terms of the plea offer . . . ." (Citations omitted; internal quotation marks omitted.) *Maia* v. *Commissioner of Correction*, 347 Conn. 449, 462–63, 298 A.3d 588 (2023). Thus, to

perform effectively, "[a]lthough trial counsel must leave the ultimate decision of whether to accept or to reject a plea offer to a defendant—and must avoid coercing the defendant into taking a particular plea—he must also provide the petitioner with adequate professional advice on his options." Id., 471.

To demonstrate prejudice under the *Strickland* test when the deficient performance of counsel occurred in the plea process and resulted in a defendant not entering into a plea agreement, "the habeas petitioner must show that but for the [deficient performance] of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." (Internal quotation marks omitted.) *Martinez* v. *Commissioner of Correction*, 221 Conn. App. 852, 865, 303 A.3d 1196 (2023), cert. denied, 348 Conn. 939, 307 A.3d 273 (2024); see also *Bonds* v. *Commissioner of Correction*, 223 Conn. App. 645, 654, 309 A.3d 411 (to demonstrate prejudice resulting from trial counsel's performance during plea negotiations, petitioner must establish "there was a reasonable probability that—but for the deficient performance—the petitioner would have accepted the plea offer, and that the trial court would have assented to the plea offer" (internal quotation marks omitted)), cert. denied, 348 Conn. 956, 310 A.3d 380 (2024).

"Furthermore . . . the specific underlying question of whether there was a reasonable probability that a habeas petitioner would have accepted a plea offer but for the deficient performance of counsel is one of fact, which will not be disturbed on appeal unless clearly

erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Martinez* v. *Commissioner of Correction*, supra, 221 Conn. App. 865–66; see *Bonds* v. *Commissioner of Correction*, supra, 223 Conn. App. 655–56 (explaining that clearly erroneous standard of review applies to factual question of whether there was reasonable probability that petitioner would have accepted plea offer in absence of deficient performance of counsel); see also *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 351, 53 A.3d 983 (2012) ("[t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous" (internal quotation marks omitted)), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013).

"It is well settled that [a] reviewing court can find against a petitioner on either [prong of *Strickland*], whichever is easier." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 342 Conn. 771, 780, 272 A.3d 189 (2022). As stated in *Strickland,* a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies." *Strickland* v. *Washington*, supra, 466 U.S. 697. In the present case, the court denied the amended habeas petition on the grounds that the petitioner failed to show both deficient performance and prejudice concerning trial counsel's performance during the plea process. On appeal, the petitioner challenges both grounds for the court's decision. We, however, need not decide whether the petitioner's trial counsel rendered deficient

performance because, even if we assume that a plea offer in the thirty year range was made and that trial counsel performed deficiently by failing to inform the petitioner of the offer and to advise the petitioner to take it, the petitioner has failed to demonstrate that he was prejudiced by his trial counsel's allegedly deficient performance in that respect. See *Martinez* v. *Commissioner of Correction*, supra, 221 Conn. App. 864–65 (petitioner's failure to satisfy either prong of *Strickland* is fatal to habeas petition); see also *Foster* v. *Commissioner of Correction*, 217 Conn. App. 658, 667–68, 289 A.3d 1206 (same), cert. denied, 348 Conn. 917, 303 A.3d 1193 (2023).

We conclude that the court's finding that the petitioner would not have accepted a plea offer is supported by the record and is not clearly erroneous. The petitioner's trial counsel testified that the petitioner had made it clear that he was not interested in taking a plea. Trial counsel further testified that when he discussed the possibility of a plea agreement with the petitioner, the petitioner responded that he "could never take a deal" because "[i]t would break his mother's heart." The court's finding is further supported by the fact that the petitioner continued to maintain his innocence, even after the jury found him guilty. See *Bonds* v. *Commissioner of Correction*, supra, 223 Conn. App. 656–57 (court reasonably could have concluded that petitioner was unlikely to plead guilty when petitioner testified at habeas trial that he "told the judge at sentencing six times that he was innocent and that he was not going to admit to something he did not do").

Moreover, the court based its finding on its assessment of the credibility of the evidence before it. As the court stated in its memorandum of decision: "The credible evidence found by this court indicates that the petitioner was never interested in a plea bargain.

Although the petitioner denied it, the court found particularly credible the statement [trial counsel] said [the petitioner] made to him when he discussed [the petitioner's] exposure and the possibility of a plea agreement [namely] that the petitioner responded: 'I could never make a deal. It would break my mother's heart.' In fact, at sentencing, after having been convicted by a jury, the petitioner continued to maintain his innocence. Anyone serving forty-five years would, with hindsight, obviously find a prior offer 'in the thirty year range' acceptable, but a man who stands convicted at sentencing and continues to profess his innocence does not exhibit the mindset of a person who had any true willingness to accept a plea bargain." (Footnote omitted.)

It is axiomatic that, "[a]s an appellate court, we do not reevaluate the credibility of testimony . . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . This court does not retry the case or evaluate the credibility of witnesses. Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Citation omitted; internal quotation marks omitted.) *Corbett* v. *Commissioner of Correction*, 133 Conn. App. 310, 316–17, 34 A.3d 1046 (2012). "A pure credibility determination made by a habeas court is *unassailable*." (Emphasis added; internal quotation marks omitted.) *Heywood* v. *Commissioner of Correction*, 211 Conn. App. 102, 116, 271 A.3d 1086, cert. denied sub nom. *Tajay H.* v. *Commissioner of Correction*, 343 Conn. 914, 274 A.3d 866 (2022).

This court defers to a habeas court's finding that a petitioner was not willing to accept a plea offer when that finding was based on the court's credibility determination. For example, in *Bonds* v. *Commissioner of Correction*, supra, 223 Conn. App. 645, this court addressed

a claim similar to the one in the present case—that trial counsel rendered ineffective assistance during plea negotiations by failing to advise the petitioner to accept a plea deal. We affirmed the habeas court's determination that the petitioner failed to establish prejudice by finding the petitioner's testimony that he would have pleaded guilty instead of proceeding to trial not credible; id., 653; and that finding was made by the court "solely on the basis of credibility determinations, which calls for further deference." Id., 656. We also concluded that there were other factors supporting the court's determination that the petitioner was not a credible witness on the issue of prejudice, including that the petitioner "told the judge at sentencing six times that he was innocent and that he was not going to admit to something he did not do."[5] Id.

Similarly, in *Fields* v. *Commissioner of Correction*, 179 Conn. App. 567, 569, 180 A.3d 638 (2018), the petitioner alleged that his trial counsel provided ineffective assistance by failing to advise him prior to trial of a plea offer made by the state. The habeas court concluded that counsel's performance was deficient but that the petitioner had not been prejudiced by counsel's deficient performance, as the petitioner failed to prove that he would have accepted the plea offer if counsel had conveyed it to him. Id. On appeal, we affirmed the judgment of the court. Id., 577. In doing so, we noted that the record showed "no evidence independent of the petitioner's own testimony that he would have accepted the state's plea offer had [his counsel] conveyed it to

---

[5] In *Bonds*, in light of the petitioner's failure to prove that he would have pleaded guilty to the offer, which was fatal to his appeal, we did not address the second factor of the prejudice test—whether the petitioner established that the court would have accepted the plea offer—and we noted that there was "no dispute about the third factor of the prejudice test, namely, that the plea offer would have involved a conviction and sentence less severe than that which was imposed." *Bonds* v. *Commissioner of Correction*, supra, 223 Conn. App. 657–58.

him"—testimony that the court discredited—and that it was "not the role of this court on appeal to second-guess credibility determinations made by the habeas court . . . ." (Citation omitted; internal quotation marks omitted.) Id.; see also *Soto* v. *Commissioner of Correction*, 215 Conn. App. 113, 127–29, 281 A.3d 1189 (2022) (affirming habeas court's determination that petitioner failed to show prejudice resulting from counsel's allegedly deficient performance during plea process when court credited counsel's testimony that petitioner insisted that he was innocent of crimes and thought plea offer was unfair, and discredited petitioner's habeas trial testimony that, but for his counsel's deficient advice, he would have accepted plea offer, as this court would not reevaluate credibility determination of habeas court); *Watts* v. *Commissioner of Correction*, 194 Conn. App. 558, 566–67, 221 A.3d 829 (2019) ("[b]ecause the habeas court discredited the petitioner's testimony [that he would have accepted plea offer], and there was no other evidence from which the court could have found that the petitioner would have accepted the plea deal offered, the petitioner failed to meet his burden of demonstrating prejudice"), cert. denied, 334 Conn. 919, 222 A.3d 514 (2020); *Rogers* v. *Commissioner of Correction*, 194 Conn. App. 339, 350–51, 221 A.3d 81 (2019) (deferring to habeas court's determination discrediting petitioner's testimony that he would have accepted plea offer if counsel had performed competently and affirming court's conclusion that petitioner was not prejudiced "even if his trial counsel did not competently advise him").

This precedent commands a similar result in the present case. Here, the court, in finding that the petitioner did not prove that he would have accepted a plea offer in the thirty year range, had trial counsel conveyed one to him, implicitly found the petitioner's testimony to the contrary not credible. See *Watts* v. *Commissioner*

*of Correction*, supra, 194 Conn. App. 566. It also "found particularly credible" trial counsel's testimony that, when he mentioned the possibility of a plea agreement to the petitioner, the petitioner responded that he "could never make a deal" because "[i]t would break his mother's heart." Although the record contains conflicting testimony, "the habeas court, as the trier of fact, was the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . [When] there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine. . . . *State* v. *James*, 237 Conn. 390, 407, 678 A.2d 1338 (1996); see *Cruz* v. *Commissioner of Correction*, 206 Conn. App. 17, 26, 257 A.3d 399 ([a]lthough the petitioner testified that he would have gone to trial but for [trial counsel's] advice, the habeas court, as the sole arbiter of the credibility of witnesses and the weight to be given to their testimony, was entitled to reject his testimony in light of the other evidence presented during trial), cert. denied, 340 Conn. 913, 265 A.3d 926 (2021); *Lebron* v. *Commissioner of Correction*, 204 Conn. App. 44, 53, 250 A.3d 44 (petitioner failed to prove prejudice in part because the court clearly did not credit the petitioner's testimony that he would not have pleaded guilty had he been advised properly [by trial counsel]), cert. denied, 336 Conn. 948, 250 A.3d 695 (2021)." (Internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, 343 Conn. 347, 359–60, 273 A.3d 680 (2022).

The petitioner did not present any evidence demonstrating that he would have accepted a plea deal in the thirty year range other than his own testimony, which the court did not credit. On the other hand, the court specifically credited trial counsel's testimony that the petitioner clearly stated that he could "never" take a

deal. Indeed, given that the court's finding that the petitioner was never willing to accept a plea offer was based on its credibility assessment of testimony, and in light of our well established deference to the court's credibility determinations, which are unassailable; see *Heywood* v. *Commissioner of Correction*, supra, 211 Conn. App. 116; we conclude that the petitioner failed to meet his burden of demonstrating that it was reasonably probable that he would have accepted a plea deal but for the deficient performance of his trial counsel and, therefore, that he was prejudiced by his trial counsel's allegedly deficient performance.[6] Consequently, the petitioner has failed to show that this claim involves an issue that is debatable among jurists of reason, that a court could resolve in a different manner, or that it is adequate to deserve encouragement to proceed further. Accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

------

[6] Given this determination, we need not reach the second prong of the prejudice test, namely, whether the trial court would have accepted a plea deal in the thirty year range, as the petitioner's failure to prove the first prong of the prejudice test—that he would have accepted a plea offer—is fatal to his claim of prejudice in this appeal. See *Bonds* v. *Commissioner of Correction*, supra, 223 Conn. App. 657–58. We note, nonetheless, that the record does not contain any evidence that would support a conclusion that the court would have accepted a plea deal in the thirty year range, especially in a case such as this one, in which there were eyewitnesses to the crime and the state's case was particularly strong.